**FOLIO IMPRESSIONS, INC., Plaintiff,**

v.

**BYER CALIFORNIA, Macy's New York, Inc., Lida Manufacturing Co., and John Does 2–20, Defendants.**

**No. 88 Civ. 5255 (BN).**

United States District Court, S.D. New York.

Oct. 4, 1990.

Silverberg, Stonehill & Goldsmith, P.C. (Kenneth R. Schacter and Jolie Frank, of counsel), New York City, for plaintiff.

Baer, Marks & Upham (Michael Delikat, Esq., of counsel), New York City, for defendants.

NEWMAN, Senior Judge of the Court of International Trade, sitting as a United States District Court Judge by designation:

## INTRODUCTION

Folio Impressions, Inc. ("Folio"), a New York corporation engaged in the importation and sale of fabric to apparel manufacturers and others, brings this action for alleged infringement of a copyright in a textile design pattern pursuant to section 501 of the Copyright Act of 1976, 17 U.S.C. § 501 (1988). Defendant Byer California ("Byer") is a California corporation with offices in New York engaged in the business of manufacturing garments. Defendant Lida Manufacturing Co. ("Lida") is a North Carolina corporation authorized to do business in New York and is in competition with Folio in selling printed fabric.

Folio claims infringement of its copyright on a textile design pattern purchased from an art studio in Lyon, France in that defendants manufactured and sold fabrics and wearing apparel utilizing a substantially similar design.[1] Defendants assert that Folio's copyright is invalid on the grounds that Folio's design lacks originality and because Folio failed to disclose to the Copyright office that a portion of its design was based on and copied from preexisting public domain material. Alternatively, defendants deny any infringement claiming that

---

1. Before trial, Folio's action against defendant Macy's New York, Inc. was dismissed without prejudice and without costs by stipulation and agreement of the respective parties. *See* Rule 41(a) Fed.R.Civ.P.

defendants' design pattern is distinguishable from and does not bear a substantial similarity to Folio's design.

Folio seeks recovery of: (1) defendants' profits and Folio's attorney's fees, 17 U.S.C. § 504, 505 (1988), respectively; and (2) a permanent injunction prohibiting infringement of plaintiff's copyright in "Pattern # 1365." *See* 17 U.S.C. § 502 (1988)[2]. Defendants seek dismissal of the complaint and also, pursuant to 17 U.S.C. § 505 (1988), seek attorney's fees in the event that they prevail in this action.

Jurisdiction rests on 28 U.S.C. § 1338(a) (1988), and venue is proper in this district pursuant to 28 U.S.C. § 1400(a) (1988). The action was tried to the court without a jury.

For reasons stated below, the court holds that Folio's copyright registration is valid because Pattern # 1365 qualifies as a derivative work insofar as the design pattern's floral component originally elaborates upon the background portion of the textile design pattern. Regarding such background portion of Pattern # 1365, the court finds that it was copied from a document in the public domain. The court, however, holds in favor of defendants on the infringement issue because defendants' design pattern is not substantially similar to Folio's design pattern.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In accordance with Rule 52, Fed.R.Civ.P., the court makes the following Findings of Fact and Conclusions of Law:

*Background*

On July 28, 1987 Raoul Bruckert Dessins Textiles ("Bruckert Design Studio"), located in Lyon, France, created a textile design pattern identified as "RG28.1." Folio purchased RG28.1 from Bruckert Design Studio for $275.00 and received a written assignment, dated August 28, 1987, of Bruckert Design Studio's rights in such design (plaintiff's exhibit 2 ("Px 2")). Notably, Bruckert Design Studio sold Folio

the design pattern representing it to be an original creation. Thereafter, Folio renamed design pattern RG28.1 as Pattern # 1365, printed it onto fabric (see Addendum A), and on September 5, 1987 published Pattern # 1365. Folio has since promoted and sold fabric imprinted with Pattern # 1365 to manufacturers of garments (Trial Transcript at 16 ("Tr. 16") (Px 4). Pattern # 1365 was later registered with the office of the Register of Copyrights and Folio was issued Certificate of Registration No. VA294–989, dated February 18, 1988 (Px 3).

Byer obtained a swatch of fabric imprinted with Folio's Pattern # 1365 subsequent to Folio's September 5 publication (the "Folio swatch") (Tr. 16). Byer presented the Folio swatch to Howard Hauptman ("Hauptman"), a Lida employee, and inquired as to whether Lida had a similar design. Hauptman in turn brought the Folio swatch to Lida's head stylist, Ms. Carol Howcroft ("Ms. Howcroft"), who responded that although Lida's design staff hadn't already created a similar design pattern Lida possessed reference materials that were similar to Folio's design pattern and could be used to create a design for Byer (Tr. 54–55). Ms. Howcroft's staff subsequently created a design pattern entitled "Baroque Rose, Pattern # 7480" ("Baroque Rose") (see Addendum B), and offered it for sale (Tr. 43–44).

On March 11, 1988 Byer presented Lida with a purchase order for Baroque Rose fabric. Subsequently, on April 8, 1988 Lida shipped the first order of the Baroque Rose design imprinted on rayon challis fabric for Byer's account. Byer thereafter manufactured wearing apparel utilizing the Baroque Rose fabric and sold approximately 1,656 dozen garments to its various customers.

*Validity of Copyright Registration VA294–989*

■ To prove copyright infringement, Folio "must show ownership of a valid

2. Pending the outcome of this action, defendants have consented to a preliminary injunction (dated August 8, 1988, Conboy, U.S.D.J.),
enjoining them "from manufacturing, selling ... any garments, textiles or other materials imprinted with ... [Folio's design]".

copyright and copying by defendants." *Novelty Textile Mills, Inc. v. Joan Fabric Corp.*, 558 F.2d 1090, 1092 (2d Cir.1977). Folio correctly argues that since it was issued a copyright registration certificate for Pattern #1365 within five years of first publication, Folio has fulfilled the requirements for making a *prima facie* showing of ownership and validity. 17 U.S.C. § 410(c) (1988); *Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir.1985). Folio relies solely on the presumption of validity afforded by its certificate of registration. It is well settled, however, that a timely issued certificate of registration creates only a rebuttable presumption of copyright validity, and defendants may offer evidentiary proof casting doubt on the copyright's validity. *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir.1980).

Defendants challenge the validity of Folio's copyright on essentially two grounds: (1) Folio's design pattern lacks originality; and (2) Folio's certificate of registration omitted disclosure that the design pattern was a "derivative work" based upon preexisting public domain material.

*Originality*

Initially, the court addresses defendants' principal contention that design pattern RG28.1 (Folio's Pattern #1365) lacks originality. Since copyright validity necessarily subsumes design originality, defendants bear the burden of establishing lack of originality[3]. Defendants argue that Folio's design pattern lacks originality, and hence validity, because: (1) the background of RG28.1 is not original, but rather copied from a public domain document; and (2) the placement and arrangement of the floral component over the background lacks sufficient artistic skill to be considered "original."

Here, the issue of copyright validity concerns the originality of design pattern RG28.1 produced by Richard Sadjan ("Sadjan"), an employee of Bruckert Design Studio. The evidence presented to rebut Folio's *prima facie* showing of originality is the deposition testimony of defendants' witness Ms. Catherine Bruckert, ("Ms. Bruckert"), and the trial testimony of defendants' expert, Professor Lee Stewart ("Prof. Stewart") corroborating Ms. Bruckert's testimony.

■ At trial, Folio objected to the admission of Ms. Bruckert's deposition testimony on the ground that the witness lacked personal knowledge of the actual source used by Sadjan in creating RG28.1. In its post-trial brief, Folio persists in its objection with regard to the admissibility of Ms. Bruckert's deposition testimony, citing Rule 602, Fed.R.Evid., and requests the court to reverse its trial ruling admitting into evidence the objected portions of the transcript that dealt with the origin of design pattern RG28.1. Further, Folio maintains that Ms. Bruckert's testimony is clear that she did not know how Sadjan created design pattern RG28.1.

The court adheres to its trial ruling that Ms. Bruckert's deposition testimony was admissible. Ms. Bruckert functions as "commercial attache" for the Bruckert Design Studio and is in charge of all sales, particularly foreign sales. She has held that position since the inception of the Studio in 1972. Ms. Bruckert's primary responsibility at the Bruckert Design Studio is selling designs to domestic and foreign clientele (Dx A 8–9). Ms. Bruckert is the daughter of the Bruckert Design Studio's founder and head designer, Raoul Bruckert. Ms. Bruckert never received any formal education in design, but she has been part of and closely observed her father's artistic accomplishments in the field. Ms. Bruckert commented: "[M]y father is an artist and I have lived in this world, this media [world] since I was a very little child" (Dx A 7–9). Although Ms. Bruckert focuses on sales, her overall responsibilities as second in command of the Studio whenever her father is absent (Dx A 16) include

---

**3.** "Since originality of the author is a necessary condition to the validity of the copyright, it follows that a certificate of registration properly obtained within the prescribed five year period constitutes *prima facie* evidence of the author's originality." 3 M. Nimmer *The Law of Copyright*, § 12.11[A] at p. 12–81 (1989).

supervising the designers and overseeing their work (Dx A 15–16). Under all the facts and circumstances, the court is persuaded that Ms. Bruckert had sufficient "personal knowledge" regarding the creation of RG28.1 to satisfy the requirements of Rule 602.

Fed.R.Evid. 602 requires a showing that a laywitness has personal knowledge of the matter concerning which the witness gives testimony. The foundation requirement of personal knowledge, however, may, but need not be proved by the witness' own testimony. Here, however, Ms. Bruckert's own testimony provided the foundation of her personal knowledge as to the origin of design pattern RG28.1.

Moreover, personal knowledge is not an absolute, but may consist of what the witness thinks she knows from personal perception. Fed.R.Evid. 602 Adv.Comm.Note; *see* 2 Wigmore, Evidence § 650 (Chadbourn rev. 1979). When asked by defendants' counsel, "[d]o you know what the source for the background of the design is," Ms. Bruckert replied: "I believe it's a document that is in our possession" (Dx A 29). "While the law is exacting in demanding firsthand observation, it is not so impractical as to insist upon preciseness of attention by the witness in observing, or certainty of recollection in recounting the facts. Accordingly when a witness uses such expressions as 'I think,' 'My impression is' [or, 'I believe'] ... this will be no ground for objection if it appears that [the witness] merely speaks from an inattentive observation, or an unsure memory. [Of course, an objection will be sustained] if the expressions are found to mean that [the witness] speaks from conjecture." McCormick, Evidence § 10 pp. 24–25.

### The Background Portion of Design Pattern RG28.1

The Second Circuit's test of originality is one with a low threshold. Simply put, the author must have contributed "something more than merely trivial variation, something recognizably his own ... [thus] ... [o]ne who has slavishly or mechanically copied from others may not claim to be an author." *L. Batlin & Sons, Inc. v. Sny-*

*der,* 536 F.2d 486, 490 (2d Cir.1976); *see, Alfred Bell & Co. v. Catalda Fine Arts, Inc.,* 191 F.2d 99, 102 (2d Cir.1951).

Based on the foregoing test of originality, the court finds that the background portion of design pattern RG28.1 (see Addendum A) lacks the requisite originality for copyright protection. In that regard, the testimony of Prof. Stewart and Ms. Bruckert establishes that the background portion of design pattern RG28.1 was copied from an unspecified public domain document, and that the balance of the design other than the documentary background (*i.e.,* the "floral pattern") was arranged by superimposing copies or "cutouts" of a single flower over the background in various positions.

Ms. Bruckert testified that the background portion of design pattern RG28.1 was copied from an unidentified public domain document obtained from Bruckert Design Studio's reference library. Ms. Bruckert's inability to pinpoint the particular and exact source document used as background for design pattern "RG28.1" does not contradict the fact that she was obviously able to posit that the most likely source for the design pattern was a public domain document.

The court attaches great credibility and weight to Ms. Bruckert's testimony that the background portion of design pattern RG28.1 was not original but copied. Significantly, Ms. Bruckert's father, Raoul Bruckert, assigned the design pattern to Folio explicitly representing that the design was "a result of my original effort," that he was "the sole creator" of the design and that the design was an "original work." Predicated on the foregoing assignment, Ms. Bruckert sold the design pattern to Folio (Dx A 40–41). Notwithstanding the fact that Ms. Bruckert's father had represented in his assignment that the design pattern sold to Folio was an original, Ms. Bruckert was willing to testify in her deposition, against her father's interest, that the background portion of the pattern was in fact not original.

Ms. Bruckert's testimony establishes that the Bruckert Design Studio created

"documentary designs"[4] from preexisting public domain materials. The sources providing the materials included individuals who are in the business of finding and selling ancient documents, bookshops that sell design books, and the files of design studios that are no longer in business (Dx A 17–20). These documents are part of the public domain and Bruckert Design Studio has built up a substantial reference library of these materials containing "huge books with samples and little bits of fabric" (Dx A 22).

Furthermore, Ms. Bruckert detailed the process by which public domain documents are incorporated into Bruckert Design Studio's creations. For example, she explained that when documentary designs are used they are photocopied to get "a clean black-and-white reproduction ... something that's clean." The source document is used to make a montage which then becomes the background for Bruckert Design Studio's pattern (Dx A 25).

The trial testimony of defendants' expert, Prof. Stewart, also persuades the court that the background portion was not original.[5] Stewart testified that the background of RG28.1 (i.e., all of the design pattern excluding the roses) was either a photograph or a photostat of a design that was printed with an engraved copper or steel cylinder, not the kind of thing that would be drawn by hand today in the short period of time that Mr. Sadjan worked on this design. It clearly appears from the defendants' uncontroverted evidence that the background of RG28.1 was an unaltered photocopy of a documentary design.

Additionally, the credible testimony of Ms. Bruckert and Prof. Stewart provide uncontroverted proof that Sadjan spent a relatively short period of time creating RG28.1. Ms. Bruckert testified that the design was the first of a series completed by Sadjan on July 28, 1987 (Dx A 37), and according to Prof. Stewart's expert opinion the photocopied background used in RG28.1 was not modified in any way because of the "consistency and regularity" of the design. Prof. Stewart characterized the design pattern as "grill work" or as a totally symmetrical design where each side is a mirror image of the other. More, Prof. Stewart explained that such work if done by hand would have taken several days to complete (Tr. 101).

In sum, the court finds that the background portion of design pattern RG28.1 was not original, but rather copied from a public domain document.

### The Particular Floral Component Imposed over the Background

The remainder of design pattern RG28.1 consists of a floral component depicting a single rose blossom (the "Folio Rose") symmetrically interspersed over the documentary background (see Addendum A). There is no stylistic distinction between any of the rose blossoms that appear in Folio's design. Each single rose blossom contains a three-pronged stem topped by a precisely drawn configuration of lines resembling a bloom with the lines arranged in exactly the same way. Respecting the originality of the Folio Rose itself, the court finds that Folio's rose blossom is an original creation. The only evidence presented by either party as to this component of the fabric design was the testimony of Ms. Bruckert, and she testified that Sadjan was the original creator of the floral component. (Dx A 35). Folio's copyright registration creates a presumption of validity, which subsumes originality of the Folio Rose. Further, Ms. Bruckert's testimony establishes the origi-

---

**4.** A "documentary design," with respect to textile design, consists of a source document, usually found in the public domain, which is then incorporated into the design by means of xerography or photocopying. The process is repeated several times in order to blend the background with the rest of the design (Dx A 18–19).

**5.** Prof. Stewart is a working designer who heads his own design studio. Since 1977, Stewart has been Professor of Textile Design at the Fashion Institute of Technology. Previously Prof. Stewart taught at Syracuse University and in Europe. He has been president of the American Fabrics Council for approximately two years. The Council is an affinity group given to the promotion of the American printed fabric. Prof. Stewart is also president of the Surface Design Discipline of the Graphic Artists Guild.

nality of the Folio Rose. In short, defendants have failed to meet their burden of proving lack of originality respecting the Folio Rose.

### The Placement and Arrangement of the Floral Component over the Background Portion of Pattern # 1365

■ Ms. Bruckert described the technique Bruckert Design Studio utilized to superimpose floral components onto design backgrounds. The designers would distribute "cutouts" or copies of a single flower over the background and photocopy the resulting pattern several times so that the outlines of the flowers become indistinguishable from the background (Dx A 30). According to Prof. Stewart's examination of the floral pattern, which corroborated Ms. Bruckert's testimony, a single "precisely drawn art deco looking kind of floral component" was pasted down over the background in a number of places (Tr. 87). Prof. Stewart characterized the work as a mechanical "clip art" process where elements are photocopied, pasted together, and photocopied again to produce a final design. He described the process as a very popular technique commonly used in the textile design field, and one requiring little, if any, artistic contribution (Tr. 90–91).

As apparent from Addendum A, the roses are spatially placed in straight rows and the only noticeable variation occurs in the orientation or direction each rose is pointed. The application of conventional techniques known as clip art requires mostly mechanical or physical skill. According to Prof. Stewart, there are readily available computer disk programs ("clip art disks") that can simulate the physical process of imprinting randomly pointed blossoms over a background design in rows equidistant from each other (Tr. 91). The court holds that there is merely trivial originality, if any, in this mechanical process. *Cf. Past Pluto Productions Corp. v. Dana*, 627 F.Supp. 1435, 1441–3 (S.D.N.Y.1986) involving flat foam novelty hats depicting the crown of the Statute of Liberty, wherein the court observed: "This Court declines, however, to find artistic originality in a design feature composed of elemental symmetry and prompted most probably by the promise of convenience in manufacture ... mechanical skill cannot be equated with originality for the purposes of the copyright laws."

The short of the matter is that the court finds little merit in Folio's assertion that Pattern # 1365 is a *wholly* original design. Defendants' unrebutted evidence establishes that the background portion of the design was copied from a public domain document. Accordingly, the court rejects Folio's argument on the issue of originality with respect to the background portion of Pattern # 1365. Additionally, the copyright protection cannot extend to the mechanical placement and arrangement of the floral component over the background portion because that aspect of the design lacks originality. Once defendants rebutted Folio's *prima facie* showing of originality (based on the statutory presumption of a valid copyright), the burden shifted back to Folio to overcome defendants' evidence. However, Folio chose not offer rebuttal evidence to show that the background portion and floral placement were original.

Notwithstanding the lack of originality respecting the background portion and the placement and arrangement of the floral component over the background portion, the Folio Rose *per se* is found to be original predicated on the unrebutted presumption of validity afforded by copyright registration and on Ms. Bruckert's deposition testimony.

### Folio's Omissions from its Copyright Registration Application (VA294–989)

On February 18, 1988 Folio filed a certificate of copyright registration with the United States Copyright Office in which design pattern "RG28.1" was designated by Folio as "Pattern # 1365" (Px 3). Significantly, in the certificate Folio omitted answers to the following questions regarding derivative works:

(1) Question 6(a): "Identify any preexisting work or works that this work is based on or incorporated."

(2) Question 6(b): "Give a brief, general statement of the material that has been

added to this work and in which copyright is claimed."

To reiterate, the background portion of Pattern # 1365 was derived from a public domain document; the floral portion of the design was an original addition imprinted upon the preexisting material from the public domain. The court must now determine whether Pattern # 1365 is entitled to derivative work status, and whether the foregoing omissions from the certificate of registration are fatal to the validity of Folio's copyright on Pattern # 1365.

*Derivative Work Status of Pattern # 1365*

■ It is axiomatic that a valid copyright protects not the idea itself, but rather the particular expression of that idea embodied in the copyrighted item. *Mazer v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954). Additionally, works in the public domain may be freely copied, but "one may bring sufficiently original variation to a public domain work to render the new version copyrightable in its own right as a derivative work." *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F.Supp. 980, 985 (S.D.N.Y.1980). It follows from these fundamental principles of copyright law that although the *idea* of a floral pattern superimposed on a background design is not protectable, the embodiment of a particular rose blossom imprinted over a specific background design is an *expression* of an idea which is entitled to copyright protection.

Although Sadjan utilized a public domain document for the background portion of design pattern RG28.1, the court finds from the testimony of Ms. Bruckert that Sadjan originally designed the rose blossom floral component imposed over the background (Dx A 35). Since Sadjan created the rose blossom portion of design pattern RG28.1, his addition of this particular original contribution to the preexisting documentary background was an expression of an idea which qualifies Pattern # 1365 as a "derivative work." Consequently, the scope of Folio's copyright protection extends only to Sadjan's original additions to the preexisting public domain material.[6]

In determining whether the combination of Sadjan's original creation, the Folio Rose imposed over a background design copied from a preexisting public domain document qualifies Pattern # 1365 for derivative work status, the court again looks to the standard for originality as enunciated by the Second Circuit. The constitutional and statutory standards are satisfied if the author's work contains something more than "merely trivial variation, something recognizably his own." *Alfred Bell & Co*, 191 F.2d at 102, 103. The originality requirement for a revised work, as for an original creation, is "minimal." *Weissmann v. Freeman*, 868 F.2d 1313, 1321 (2d Cir. 1989); *see also, Durham Indus.*, 630 F.2d at 909 ("to support a copyright the original aspects of a derivative work must be more than trivial").

Defendants concede that had Folio responded to the questions in the certificate of registration addressed to the derivative work status of Pattern # 1365, such design pattern would be entitled to copyright protection as a derivative work (Tr. 21). The court views this as an admission that at least part of the design is original, and hence protectable. Based on all the aforementioned facts and circumstances the court holds that Pattern # 1365 is entitled to derivative work status. *See* 17 U.S.C. § 103 (1988).[7]

The court now turns to defendants' contention that Folio's copyright is nonetheless

---

**6.** The Copyright Act of 1976, § 101, 17 U.S.C. § 101 (1988), states in pertinent part: "A derivative work is a work based upon one or more preexisting works.... A work consisting of ... elaboration, or other modifications which, as a whole, represent[s] an original work of authorship is a derivative work."

Additionally, § 103(b) states: "The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material ..."

**7.** *See also, Russ Berrie & Co.*, 482 F.Supp. at 985 ("In such circumstances, copyright protection extends only to the new material contributed to the prior work"); 1 M. Nimmer *The Law of Copyright*, § 41 (1989).

invalid because Folio omitted disclosure that the background portion of Pattern # 1365 was copied from preexisting public domain material. Defendants' contention is without merit.

An *innocent* or *inadvertent* omission will not invalidate a copyright registration. Hence, "only the *knowing failure* to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid, and thus incapable of supporting an infringement action ... or denying enforcement on the ground of unclean hands." *Eckes v. Price Card Update,* 736 F.2d 859, 861–2 (2d Cir.1984) (emphasis supplied).

Here, there is no proof that Folio "knowingly" concealed the fact that part of its design pattern was copied from a public domain document. Thus, defendants have failed to establish their defense of invalidity based on Folio's omissions from its copyright application.

In sum, having found that Sadjan's addition of a particular rose blossom to the documentary background qualifies Pattern # 1365, as a derivative work—with copyright protection limited to the original additions made by Sadjan—the court sustains the validity of Folio's copyright registration inasmuch as the floral component originally elaborates upon the background portion of Folio's design pattern. The copyright registration, however, affords no protection to Folio regarding the background portion of the design pattern which the court finds is a copy of a document existing in the public domain.

*Infringement*

■ Folio alleges that Lida's design pattern, Baroque Rose (see Addendum B), infringes Folio's copyright in Pattern # 1365. Fundamentally, in the absence of direct copying, "a plaintiff may prove copying by showing access and substantial similarity" of the two works. *Novelty Textile,* 558 F.2d at 1092. In the instant case, access by defendants is conceded because defendants admit that Byer's representative, Hauptman, presented the Folio swatch to Lida's head stylist, Ms. Howcroft, whose staff actually viewed the swatch before Lida's Baroque Rose design was created.

The focus, therefore, concerns only the substantial similarity issue. There is no need to consider the issue of substantial similarity between the *background portions* of Folio's and Lida's design patterns since, as observed above, Folio's background was copied from a public domain document and consequently is not entitled to copyright protection. The court will thus consider the similarity between only the *floral components* because substantial similarity of the entire design or the similarity of the overall effect of the design is *not* the test when dealing with an alleged infringement of a derivative work. *See, Past Pluto,* 627 F.Supp. at 1442 ("[a]ccordingly, Past Pluto's argument that its hat is copyrightable is ultimately reduced to the basic contention that the hat's silhouette window design is sufficiently original to afford plaintiff's hat at least some measure of copyright protection").

To determine substantial similarity the court is required to compare the designs from the position of a "lay observer." The long settled Second Circuit "substantially similarity" test as originally stated by Judge Learned Hand, is whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.... [Furthermore, in deciding the question] ... one should consider the uses for which the design is intended, especially the scrutiny that observers will give to it as used". *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960); *See, e.g., Horgan v. Macmillan, Inc.,* 789 F.2d 157, 162 (2d Cir.1986); *Novelty Textile,* 558 F.2d at 1093.

The court, using its layman's eye, finds that while the Folio Rose appears to be a disjointed configuration of thick and thin lines (the only similarity between the Lida Rose and the Folio Rose), the Lida Rose does not present a substantially similar aesthetic appeal. The Folio Rose has sharper edges, a three pronged stem, and presents a much more geometrically styl-

ized appearance. The Lida Rose has a single stem, is softer looking and the lines are more painterly and well rounded. It looks fuller in that there is more white space separating the black lines. Additionally, the Lida Rose is slightly larger and each blossom in the Baroque Rose design pattern has many different nuances; in other words, no two blossoms are precisely alike. Conversely, the Folio Rose is smaller and "cutouts" or copies of a single blossom have been symmetrically replicated all over the background of the design pattern. The court heretofore found that Sadjan's placement and spacing is considered mechanical skill and not entitled to copyright protection.

The court is further guided by the well known fact that many purchasers of garments are interested in a particular design pattern, and before making a purchase do not merely observe a garment from a distance. Instead, purchasers who are shopping for a particular design pattern will closely inspect the wearing apparel to determine if the desired design pattern is present in the fabric, and then perhaps stand back to observe the overall presentation. Even under casual scrutiny, the defendants' Lida Rose is markedly dissimilar from the Folio Rose as they are imposed over their respective backgrounds (which are also markedly different).

In summary, applying the ordinary observer test, the court determines that defendants' floral component is not substantially similar to Folio's floral component, and hence does not infringe on Folio's copyright registration, which the court finds protects only the original additions contributed by Sadjan to the unprotectable documentary background.

## CONCLUSION

Defendants have failed to establish that Folio's copyright is totally invalid. Plain-

tiff's particular rose blossom floral component, insofar as it adds to Pattern # 1365's documentary background, is found to be original and thus protectable as a derivative work. Moreover, Folio's failure to respond to the questions in its copyright registration certificate related to derivative works was not done knowingly, but rather innocently and is of no consequence.

Folio, however, has failed to sustain its burden of proving infringement. The court finds no direct proof of copying by defendants and the parties' floral components are not found to be substantially similar.

Concerning defendants' request for attorney's fees, the Copyright Act provides that the district court, in its discretion, may award attorney's fees to the prevailing party. 17 U.S.C. § 505 (1988). Although attorney's fees are awarded as a matter of course to a victorious plaintiff, a defendant who prevails will recover if "plaintiff's claims are objectively without reasonable merit," *Diamond v. Am–Law Pub. Corp.*, 745 F.2d 142, 148 (2d Cir.1984), or are "baseless, frivolous, unreasonable or brought in bad faith," *Roth v. Pritikin*, 787 F.2d 54, 57 (2d Cir.1986). Since there has been no showing that Folio's lawsuit here is "baseless, frivolous, unreasonable, brought in bad faith or objectively without merit," each side shall bear its own attorney's fees.

For the foregoing reasons, Folio's request seeking defendants' profits and Folio's application for a permanent injunction are denied, and Folio's action for copyright infringement is dismissed.

The preliminary injunction in this case is dissolved. The clerk of the court is instructed to enter judgment for defendants dismissing the complaint and dissolving the preliminary injunction.

ADDENDUM A